UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Manhattan Division**

| | |
|---|---|
| **JAVELIN GLOBAL COMMODITIES (UK), LTD and BLUEGRASS COMMODITIES LP (formerly known as Blackjewel Marketing and Sales, LLC),** | Index No.  COMPLAINT |
| Plaintiffs, | |
| v. | |
| **LEXINGTON COAL COMPANY, LLC,** | |
| Defendant. | |

JAVELIN GLOBAL COMMODITIES (UK), LTD. ("Javelin") and BLUEGRASS COMMODITIES LP ("Bluegrass", and together with Javelin, the "Plaintiffs") allege for their Complaint against LEXINGTON COAL COMPANY, LLC ("Defendant" or "Lexington Coal") as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1. This case arises from the breach of two contracts related to the marketing and sale of coal produced by Defendant Lexington Coal and its affiliates -- a contract in which Defendant granted Plaintiff Bluegrass the exclusive right to market and sell such coal, and a master coal purchase and sale agreement under which Defendant agreed to sell metallurgical coal to Plaintiff Javelin.

2. Lexington Coal breached its contractual obligation to permit Bluegrass to be the exclusive marketer and seller of the coal it produced.

3. Lexington Coal likewise breached its contractual obligation to sell Javelin metallurgical coal as required in two coal purchase and sale transactions arising pursuant to the parties' master coal purchase and sale agreement.

4. Bluegrass seeks specific performance of Lexington Coal's obligations under the parties' coal marketing agreement, as well as recovery from Lexington Coal of the lost sales commissions and fees Bluegrass sustained due to Lexington Coal's direct marketing and sale of its coal in violation of the agreement, along with default interest payable under the agreement. If specific performance is not available, then Bluegrass seeks its expectation damages for the lost exclusive marketing right.

5. Javelin seeks an award of money damages against Lexington Coal for the Buyer's Damages it sustained due to Lexington Coal's failure to deliver any of the coal it agreed to sell to Javelin in two purchase and sale transactions, as such Buyer's Damages are defined and are to be calculated pursuant to the parties' master coal purchase and sale agreement.

## PARTIES

6. Plaintiff Javelin is a limited company established under the laws of England and Wales and having a place of business at 7 Howick Place, London SW1 P1BB, United Kingdom.

7. Plaintiff Bluegrass, formerly known as Blackjewel Marketing and Sales, LLC, is a Delaware limited partnership having offices at 3 Columbus Circle, 15th Floor, New York, New York, 10019. Neither the general partner nor any of the limited partners of Bluegrass are citizens of Delaware or Kentucky.

8. Defendant Lexington Coal is a Delaware limited liability company with its principal office address located at 164 Main Street, Suite 401, Pikeville, Kentucky, 41501.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), as this is an action between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Lexington Coal submitted to the personal jurisdiction of this Court pursuant to the Exclusive Coal Marketing Agreement and the Master Coal Purchase and Sale Agreement. *See* Exhibit A, §§ 11.05, 11.06, Exhibit C, §§ 21.1, 21.2.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) because Defendant has consented to this Court's jurisdiction and waived any objection to venue in this Court. *See* Exhibit A, §§ 11.05, 11.06, Exhibit C, §§ 21.1, 21.2.

## FACTS

12. At all relevant times, Lexington Coal has engaged in the business of producing thermal and metallurgical coal from coal mines it owns and/or controls situated in the U.S.

13. At all relevant times, Bluegrass and Javelin have engaged in the business of trading coal and coal products.

14. On January 1, 2018, Bluegrass and Lexington Coal entered into a Coal Marketing Agreement, a true and correct copy of which is attached hereto as Exhibit A (the "Exclusive Coal Marketing Agreement").

15. Pursuant to the Exclusive Coal Marketing Agreement, Lexington Coal appointed Bluegrass to market and sell coal produced from all of the mines either owned by Lexington Coal or its affiliates or that Lexington Coal or its affiliates had the right to operate as of the date of the Exclusive Coal Marketing Agreement or any time thereafter during the term of the Exclusive Coal

3

Marketing Agreement.  *See* Exhibit A.  All such coal produced by Lexington Coal or any of its affiliates is hereafter referred to in this Complaint as the "Coal".

16. Pursuant to the Exclusive Coal Marketing Agreement, Lexington Coal agreed that Bluegrass would be the exclusive marketer and sales representative in respect of sales of the Coal, and that Lexington Coal would not sell Coal to any person or business entity other than Bluegrass.  Exhibit A, §§ 2.01, 4.02.

17. As compensation for the marketing and related services to be provided by Bluegrass with respect to the Coal, Lexington Coal agreed to pay Bluegrass certain fees and commissions, including a sales commission equal to one percent (1%) of the Sales Price for such Coal, as defined by and calculated in accordance with the Exclusive Coal Marketing Agreement.  Exhibit A, § 6.01(a)(i).

18. In order to facilitate the marketing and sale of the Coal, the Exclusive Coal Marketing Agreement requires Lexington Coal to provide to Bluegrass, on or before the 15th day of each calendar month during the term of the agreement, certain written information in respect of the Coal, including Lexington Coal's uncommitted Coal volumes and qualities for the next six months, and open laycans at any ports at which Lexington Coal has throughput rights for the next six months.  Exhibit A, § 3.01.

19. On March 1, 2019, Lexington Coal and Bluegrass entered into a First Amendment to Coal Marketing Agreement, a true and correct copy of which is attached hereto as Exhibit B.

20. Pursuant to the First Amendment to Coal Marketing Agreement, Bluegrass and Lexington Coal amended the Exclusive Coal Marketing Agreement to permit Lexington Coal to sell Coal directly to Javelin, an affiliate of Bluegrass.  *See* Exhibit B, § 1(d), (e).

21. On March 1, 2019, contemporaneously with the execution of the First Amendment to Coal Marketing Agreement, Lexington Coal and Javelin entered into that Master Coal Purchase and Sale Agreement, a true and correct copy of which is attached hereto as Exhibit C, under which Lexington Coal agreed to sell and Javelin agreed to purchase Coal pursuant to the terms of individual purchase and sale transactions to be negotiated by the parties.

22. Coal purchase and sale transactions between Lexington Coal and Javelin are governed by the Master Coal Purchase and Sale Agreement, and the documents and other confirming evidence exchanged between the parties confirming those transactions. *See* Exhibit C, preamble.

23. The Master Coal Purchase and Sale Agreement does not require coal sales transactions to be incorporated into a written and mutually executed agreement in order for such sales transactions to be binding on the parties. *See* Exhibit C, preamble.

24. In or before March 2020, Lexington Coal began marketing and selling the Coal directly to contract counterparties other than Bluegrass and Javelin, including trading companies and end users of coal, in direct violation of the Exclusive Coal Marketing Agreement.

25. Commencing on April 3, 2020, Lexington Coal began shipping Coal it had marketed and sold directly to contract counterparties other than Bluegrass and Javelin in violation of the Exclusive Coal Marketing Agreement, including approximately 120,452 short tons directly marketed, sold and shipped to Integrity Coal Sales, Inc. from April 3, 2020 through the present.

26. On September 17, 2020, legal counsel for Bluegrass and Javelin sent Lexington Coal a cease and desist letter demanding that Lexington Coal cease and desist from the bidding and sale of the Coal directly or through any person other than Bluegrass or Javelin, and reserving all rights and remedies under the Exclusive Coal Marketing Agreement (the "First Cease and

Desist Letter"). A true and correct copy of the First Cease and Desist Letter is attached hereto as Exhibit D.

27. Lexington Coal ignored the First Cease and Desist Letter, and continued its direct marketing and sale of the Coal in violation of the Exclusive Coal Marketing Agreement.

28. On November 26, 2020, legal counsel for Bluegrass and Javelin sent Lexington Coal a renewed demand to cease and desist direct marketing and sale of the Coal in violation of the Exclusive Marketing Agreement (the "Renewed Cease and Desist Letter"). A true and correct copy of the Renewed Cease and Desist Letter is attached hereto as Exhibit E.

29. In the Renewed Cease and Desist Letter, Bluegrass demanded that Lexington Coal provide copies of all purchase orders and related documentation for all Coal sales not conducted through Bluegrass and/or Javelin. *See* Exhibit E.

30. In the Renewed Cease and Desist Letter, Bluegrass advised that, pending Lexington Coal's provision of all purchase orders and documentation of its direct Coal sales in violation of the Exclusive Coal Marketing Agreement, Bluegrass's estimated damages in unpaid fees and commissions arising from such direct Coal sales were approximately $88,000 at that time. *See* Exhibit E.

31. On information and belief, based on Bluegrass's knowledge of the coal market, Bluegrass estimates its damages in unpaid fees and commissions arising from such direct Coal sales are now approximately $116,718.00 calculated on the short tons shipped to date under such direct Coal sales, and are increasing with each shipment.

32. In the Renewed Cease and Desist Letter, Bluegrass further advised Lexington Coal that, should it fail to remedy its breach of the Exclusive Coal Marketing Agreement within thirty (30) days, such failure would constitute an Event of Default under Section 8.01(c) of the Exclusive

Coal Marketing Agreement, which would entitle Bluegrass to claim interest on all amounts due under the Exclusive Coal Marketing Agreement at a default interest rate of one percent (1%) per calendar month, running from the occurrence of the Event of Default and payable to Bluegrass on demand.  *See* Exhibit E.

33. On December 16, 2020, counsel for Bluegrass and Javelin sent Lexington Coal a final cease and desist letter demanding that Lexington Coal cease and desist from direct marketing and sale of the Coal in violation of the Exclusive Coal Marketing Agreement, demanding the production of all purchase orders and related documentation of any direct Coal sales by Lexington Coal in violation of the Exclusive Coal Marketing Agreement, and demanding the payment to Bluegrass of all fees and commissions owed under the Exclusive Coal Marketing Agreement on direct Coal sales by Lexington Coal (the "Final Cease and Desist Letter").  A true and correct copy of the Final Cease and Desist Letter is attached hereto as Exhibit F.

34. Lexington Coal has refused to provide any information or documentation regarding its direct Coal sales, and on information and belief, continues to market and sell the Coal to trading companies and end users in violation of Bluegrass's exclusive marketing and sale rights under the Exclusive Coal Marketing Agreement.

35. Lexington Coal has failed to participate in regularly scheduled sales and marketing calls with Bluegrass with respect to the Coal, and has otherwise failed to provide Bluegrass with information regarding Lexington Coal's uncommitted Coal volumes and qualities and its loading rights at any ports at which Lexington Coal has throughput rights, as Lexington Coal is required to do each calendar month for a six-month forward looking period under Section 3.01 of the Exclusive Coal Marketing Agreement.  *See* Exhibit A, § 3.01(a) and (b).

36. Pursuant to the Master Coal Purchase and Sale Agreement between Lexington Coal and Javelin, via a series of email exchanges, on September 18, 2020, Lexington Coal, through its President, Jeremy Hoops, agreed to sell Javelin one trainload constituting a minimum of 12,500 shorts tons of Lexington Coal High Volatile B Metallurgical Coal at a contract price of $62.50 per short ton for delivery to Javelin's railcar at Fork Creek, West Virginia, CSX loadout during October 2020 pursuant to a delivery schedule to be mutually agreed between Lexington Coal and Javelin.

37. Javelin memorialized the agreed terms of the September 18, 2020 coal purchase and sale in a written Coal Sales Confirmation bearing Transaction Reference Number LEX20(TP)0009 ("Confirmation LEX20(TP)0009"), a true and correct copy of which is attached as Exhibit G.

38. Javelin delivered Confirmation LEX20(TP)0009 to Lexington Coal for signature on October 14, 2020.

39. Although Lexington Coal did not return a signed Confirmation LEX20(TP)0009 to Javelin, an executed sales confirmation is not required for a coal sales transaction agreed to by the parties to be binding under the terms of the Master Coal Purchase and Sale Agreement. This is also true under New York's Uniform Commercial Code.

40. Lexington Coal was bound by Confirmation LEX20(TP)0009 because it promised to ship the Coal and partially performed by, *inter alia*: (i) on September 18, 2020, accepting Javelin's nomination of one shipment under Confirmation LEX20(TP)0009 for delivery in October 2020, for which a train was scheduled with the railroad for October 26, 2020; (ii) on October 19, 2020, obtaining Javelin's agreement to roll the October 2020 delivery back to November 2020;

and (iii) on November 3, 2020, requesting that Javelin agree to further delay delivery of the shipment until December 2020.

41. On November 24, 2020, Lexington Coal notified Javelin that it would not perform a delivery under Confirmation LEX20(TP)0009 in December 2020, and made no subsequent effort to reschedule delivery of the Coal under Confirmation LEX20(TP)0009 after that date.

42. Pursuant to the Master Coal Purchase and Sale Agreement between Lexington Coal and Javelin, via a series of email exchanges, on October 13, 2020, Lexington Coal, through its authorized agent, George A. McClellan, agreed to sell Javelin 136,000 short tons, plus or minus 10% at Javelin's option, of Lexington Coal High Volatile B Metallurgical Coal at a contract price per short ton to be calculated pursuant to an agreed formula based on the Platts Mid Vol 64 HCC Australia Index price published for hard coking coal, for delivery to Javelin's railcar at Ben Creek, West Virginia, NS loadout during the period from November 2020 through June 2021 in one to two shipments per month, but not more or less than three shipments in any consecutive two month period unless otherwise agreed by Lexington Coal and Javelin.

43. Javelin memorialized the agreed terms of the October 13, 2020 coal purchase and sale transaction in a Coal Sales Confirmation bearing Transaction Reference Number LEX20(TP)0010 ("Confirmation LEX20(TP)0010"), a true and correct copy of which is attached as Exhibit H.

44. Javelin delivered Confirmation LEX20(TP)0010 to Lexington Coal for signature on November 20, 2020.

45. Although Lexington Coal did not return a signed Confirmation LEX20(TP)0010 to Javelin, an executed sales confirmation is not required for a coal sales transaction agreed to by the

parties to be binding under the terms of the Master Coal Purchase and Sale Agreement. This is also true under New York's Uniform Commercial Code.

46. Lexington Coal was bound by Confirmation LEX20(TP)0010 because it promised to ship the Coal and partially performed by, *inter alia*: (i) on November 6, 2020, in response to Javelin's nomination of two shipments to be delivered under Confirmation LEX20(TP)0010 in the first half of December 2020, counter-proposing that Lexington Coal deliver two shipments under either Confirmation LEX20(TP)0009 or Confirmation LEX20(TP)0010 in the second half of December 2020; (ii) on November 24, 2020, withdrawing its proposal to deliver two shipments in the second half of December 2020 under either Confirmation LEX20(TP)0009 or Confirmation LEX20(TP)0010 and instead offering to deliver one shipment in each of January, February and March 2021; and (iii) on December 12, 2020, after Javelin nominated two deliveries for January 2021, responding that Lexington Coal would not deliver any shipments in January 2021.

47. Lexington Coal made no subsequent effort to schedule delivery of the Coal under Confirmation LEX20(TP)0010 after November 24, 2020.

48. At the time Lexington Coal and Javelin agreed to all material terms of the sale of Coal under Confirmation LEX20(TP)0009 and Confirmation LEX20(TP)0010, Lexington Coal and Javelin had established a course of dealing pursuant to which they performed Coal purchase and sale transactions on the basis of agreement to all material purchase and sale terms via email exchange, irrespective of whether or not they exchanged fully executed coal purchase and sale confirmations.

49. Lexington Coal repudiated the sales transactions memorialized by both Confirmation LEX20(TP)0009 and LEX20(TP)0010 in a letter dated December 1, 2020 to Bluegrass and Javelin, and maintained it has no obligation to perform those sales transactions

because it did not sign and return written confirmations for the transactions. *See* letter dated December 1, 2020 from Jeremy Hoops, President of Lexington Coal, to Bluegrass and Javelin, a true and correct copy of which is attached hereto as Exhibit I.

50. Despite repeated attempts by Bluegrass to enforce its rights under the Exclusive Coal Marketing Agreement, Lexington Coal has refused to provide the information it is required to give Bluegrass under the Exclusive Coal Marketing Agreement to facilitate the marketing and sale of the Coal by Bluegrass, and has likewise refused to provide Bluegrass any information or documentation of its direct Coal sales made in breach of the Exclusive Coal Marketing Agreement.

51. Lexington Coal's failure to cure its breach of Bluegrass's exclusive marketing and sale rights in respect of the Coal, its continuing failure to provide Bluegrass the information required to enable Bluegrass to market and sell the Coal, its refusal to produce documentation of its direct Coal sales, and its failure to pay Bluegrass sales commission in respect of its direct Coal sales, constitute an Event of Default under the Exclusive Coal Marketing and Sale Agreement.

52. Despite repeated attempts by Javelin to enforce the coal purchase and sale transactions memorialized in Confirmation LEX20(TP)0009 and LEX20(TP)0010, Lexington Coal has failed to deliver a single shipment of Coal under either transaction, and has made no effort to schedule any future shipments under either transaction since repudiating both transactions on December 1, 2020.

53. Lexington Coal's failure to ship any Coal under Confirmation LEX20(TP)0009 and Confirmation LEX20(TP)0010 constitutes an Event of Default under the Master Coal Purchase and Sale Agreement.

## COUNT I
## BREACH OF EXCLUSIVE COAL MARKETING AGREEMENT
### MONEY DAMAGES

54. Bluegrass and Javelin repeat and reallege paragraphs 1 through 53 hereof, as if fully set forth herein.

55. Pursuant to the Exclusive Coal Marketing Agreement, as amended by the First Amendment to Coal Marketing Agreement, Lexington Coal agreed that Bluegrass would be the exclusive marketer and sales representative in respect of sales of the Coal, and that Lexington Coal would not sell Coal to any person or business entity other than Bluegrass or Javelin.  Exhibit A, §§ 2.01, 4.02; Exhibit B, § 1(d), (e).

56. Pursuant to the Exclusive Coal Marketing Agreement, Lexington Coal agreed to pay Bluegrass certain fees and commissions with respect to all Coal sold during the term of the agreement, including a sales commission equal to one percent (1%) of the Sales Price for such Coal, as defined by and calculated in accordance with the Exclusive Coal Marketing Agreement. Exhibit A, § 6.01(a)(i).

57. Lexington Coal breached the exclusive marketing provision of the Exclusive Coal Marketing Agreement by engaging in direct marketing and sales of the Coal to contract counterparties other than Bluegrass and Javelin, including trading companies and end users of coal.

58. Lexington Coal breached its obligation to pay Bluegrass the sales commission and fees required under the Exclusive Coal Marketing Agreement on its direct sales of the Coal made to contract counterparties other than Bluegrass or Javelin in violation of the agreement.

59. Lexington Coal has frustrated efforts by Bluegrass to determine the amount of fees and commissions it is owed under the Exclusive Coal Marketing Agreement by refusing to provide

Bluegrass with any information or documentation concerning its direct Coal sales made in violation of the agreement.

60. As a direct and proximate result of Lexington Coal's breach of the exclusive marketing rights granted to Bluegrass in respect of the Coal, Bluegrass has suffered money damages in the form of lost sales commissions and other fees payable to Bluegrass on all Coal sold directly by Lexington Coal to contract counterparties other than Bluegrass and Javelin.

61. While Bluegrass is unable to ascertain its money damages with specificity due to Lexington Coal's refusal to provide information or documentation concerning its direct Coal sales made in breach of the Exclusive Coal Marketing Agreement, based on Bluegrass's knowledge of the coal market, it estimates those money damages currently total approximately $116,718.00, and increase with every shipment made under such direct Coal sales.

62. Lexington Coal's failure to cure its breach of the Exclusive Coal Marketing Agreement, as set forth in the above paragraphs, constitutes an Event of Default under the Exclusive Coal Marketing Agreement, entitling Bluegrass to claim interest on all amounts due to it under the agreement at a default interest rate of one percent (1%) per calendar month, running from the occurrence of the Event of Default and payable to Bluegrass on demand.  Exhibit A, § 8.01(c).

## COUNT II
## BREACH OF EXCLUSIVE COAL MARKETING AGREEMENT
### SPECIFIC PERFORMANCE, OR IN THE ALTERNATIVE, <u>EXPECTATION DAMAGES</u>

63. Bluegrass and Javelin repeat and reallege paragraphs 1 through 62 hereof, as if fully set forth herein.

64. Pursuant to the Exclusive Coal Marketing Agreement, Lexington Coal agreed that Bluegrass would be the exclusive marketer and sales representative in respect of sales of the Coal, and that Lexington Coal would not sell Coal to any person or business entity other than Bluegrass or its affiliate, Javelin.  Exhibit A, §§ 2.01, 4.02; Exhibit B.

65. Pursuant to the Exclusive Coal Marketing Agreement, Lexington Coal is required to provide to Bluegrass, on no less than a monthly basis, certain written information in respect of the Coal to enable Bluegrass to market and sell the Coal, including Lexington Coal's uncommitted Coal volumes and qualities for the next six months, and open laycans at any ports at which Lexington Coal has throughput rights for the next six months.  Exhibit A, § 3.01.

66. Lexington Coal breached the Exclusive Coal Marketing Agreement by refusing to provide information in respect of the Coal necessary for Bluegrass to market and sell the Coal.

67. Lexington Coal breached the Exclusive Coal Marketing Agreement by engaging in direct marketing and sales of the Coal to contract counterparties other than Bluegrass and Javelin in violation of Bluegrass's exclusive coal marketing and sale rights.

68. As a direct and proximate result of Lexington Coal's breach of the Exclusive Coal Marketing Agreement as set forth in the above paragraphs, Bluegrass has been prevented from marketing and selling the Coal, and has been deprived of its exclusive marketing rights.

69. Bluegrass is entitled to specific performance by Lexington Coal of its obligation to give Bluegrass exclusive marketing and sale rights with respect to the Coal, and to provide Bluegrass information as required by the Exclusive Coal Marketing Agreement in order to exercise its exclusive right to market and sell the Coal.

70. If specific performance is not available as a remedy for Lexington Coal's breach of the Exclusive Coal Marketing Agreement, Bluegrass is entitled to recover its expectation damages

to compensate it for the loss of money it reasonably anticipated to earn under the Exclusive Coal Marketing Agreement that Lexington Coal refuses to perform, in an amount to be determined at trial.

## COUNT III
## BREACH OF CONFIRMATION LEX20(TP)0009

### MONEY DAMAGES

71. Bluegrass and Javelin repeat and reallege paragraphs 1 through 70 hereof, as if fully set forth herein.

72. Pursuant to the Master Coal Purchase and Sale Agreement, Lexington Coal agreed in the transaction memorialized in Confirmation LEX20(TP)0009 to sell Javelin one trainload constituting a minimum of 12,500 shorts tons of Lexington Coal High Volatile B Metallurgical Coal at a contract price of $62.50 per short ton for delivery to Javelin's railcar at Fork Creek, West Virginia, CSX loadout during October 2020 pursuant to a delivery schedule to be mutually agreed between Lexington Coal and Javelin.

73. An executed sales confirmation is not required for a coal sales transaction agreed to by the parties to be binding under the terms of the Master Coal Purchase and Sale Agreement. This is also true under New York's Uniform Commercial Code.

74. Lexington Coal was bound by Confirmation LEX20(TP)0009 because it promised to ship the Coal and partially performed by accepting nominations by Javelin for deliveries of the Coal under Confirmation LEX20(TP)0009 and further by negotiating delayed delivery dates for shipments of the Coal under Confirmation LEX20(TP)0009 with Javelin over the course of almost two months.

75. At the time Lexington Coal and Javelin agreed to the purchase and sale of coal contemplated by Confirmation LEX20(TP)0009, the parties had established a course of dealing

under which they performed Coal purchase and sale transactions irrespective of whether or not they exchanged executed confirmations.

76. Lexington Coal breached its contractual duty to sell Coal to Javelin under Confirmation LEX20(TP)0009 by repudiating the coal purchase and sale transaction and failing to deliver any Coal to Javelin.

77. As a direct and proximate result of Lexington Coal's breach of its contractual duty to deliver Coal to Javelin under Confirmation LEX20(TP)0009, Javelin has sustained money damages.

78. Pursuant to Section 14.1 of the Master Coal Purchase and Sale Agreement, Lexington Coal's failure to deliver Coal to Javelin under Confirmation LEX20(TP)0009 in breach of the agreement entitles Javelin to recover Buyer's Damages from Lexington Coal, to be calculated as set forth in the Master Coal Purchase and Sale Agreement.

79. The Buyer's Damages due from Lexington Coal to Javelin under Section 14.1 of the Master Coal Purchase and Sale Agreement as a result of Lexington Coal's failure to deliver any Coal under Confirmation LEX20(TP)0009 total $389,602.00.

## COUNT IV
## BREACH OF CONFIRMATION LEX20(TP)0010

### MONEY DAMAGES

80. Bluegrass and Javelin repeat and reallege paragraphs 1 through 79 hereof, as if fully set forth herein.

81. Pursuant to the Master Coal Purchase and Sale Agreement, Lexington Coal agreed in the transaction memorialized in Confirmation LEX20(TP)0010 to sell Javelin 136,000 short tons, plus or minus 10%, at Javelin's option, of Lexington Coal High Volatile B Metallurgical Coal at a contract price per short ton to be calculated pursuant to an agreed formula based on the

Platts Mid Vol 64 HCC Australia Index price published for hard coking coal, for delivery to Javelin's railcar at Ben Creek, West Virginia, NS loadout during the period from November 2020 through June 2021 in one to two shipments per month, but not more or less than three shipments in any consecutive two month period unless otherwise agreed by Lexington Coal and Javelin.

82. An executed sales confirmation is not required for a coal sales transaction agreed to by the parties to be binding under the terms of the Master Coal Purchase and Sale Agreement. This is also true under New York's Uniform Commercial Code.

83. Lexington Coal was bound by Confirmation LEX20(TP)0010 because it promised to deliver the coal and partially performed by engaging in discussions with Javelin to schedule delivery dates for shipments of Coal under Confirmation LEX20(TP)0010 over the course of several weeks.

84. At the time Lexington Coal and Javelin agreed to the purchase and sale of coal contemplated by Confirmation LEX20(TP)0010, the parties had established a course of dealing under which they performed Coal purchase and sale transactions irrespective of whether or not they exchanged executed coal purchase and sale confirmations.

85. Lexington Coal breached its contractual duty to sell Coal to Javelin under Confirmation LEX20(TP)0010 by repudiating the coal purchase and sale transaction and failing to deliver any Coal to Javelin.

86. As a direct and proximate result of Lexington Coal's breach of its contractual duty to deliver Coal to Javelin under Confirmation LEX20(TP)0010, Javelin has sustained money damages.

87. Pursuant to Section 14.1 of the Master Coal Purchase and Sale Agreement, Lexington Coal's failure to deliver Coal to Javelin under Confirmation LEX20(TP)0010 in breach

of the agreement entitles Javelin to recover Buyer's Damages from Lexington Coal, to be calculated as set forth in the Master Coal Purchase and Sale Agreement.

88.     The Buyer's Damages due from Lexington Coal to Javelin under Section 14.1 of the Master Coal Purchase and Sale Agreement as a result of Lexington Coal's failure to deliver any Coal under Confirmation LEX20(TP)0010 total $1,126,920.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully ask this Honorable Court to grant judgment in their favor by entering one or more orders containing the following relief:

A.      awarding Bluegrass specific performance from Lexington Coal of its contractual obligation under the Exclusive Coal Marketing Agreement to grant Bluegrass exclusive marketing and sale rights with respect to the Coal during the term of the agreement;

B.      awarding Bluegrass specific performance from Lexington Coal of its contractual obligation under the Exclusive Coal Marketing Agreement to provide Javelin with the information required under the agreement in respect of the Coal to permit Bluegrass to market and sell the Coal;

C.      in the event specific performance is not available as a remedy to enforce Bluegrass's exclusive marketing rights under the Exclusive Coal Marketing Agreement, awarding Bluegrass money damages in the amount it reasonably anticipated earning under the agreement as expectation damages for Lexington Coal's breach of the agreement;

D.      compelling Lexington Coal to provide documentation of all direct Coal sales it made in violation of the Exclusive Coal Marketing Agreement;

E.      awarding Bluegrass money damages against Lexington Coal in the amount of any fees and commissions payable to Bluegrass under the Exclusive Coal Marketing Agreement on all of Lexington Coal's direct Coal sales made in breach of that agreement, which Bluegrass estimates

presently total $116,718.00 based on shipments Lexington Coal has made under such direct Coal sales to date, together with an award of default interest under Section 8.01(c) of the agreement;

  F. awarding Javelin money damages against Lexington Coal in the amount of $1,516,522.00 as Buyer's Damages under Section 14.1 of the Master Coal Purchase and Sale Agreement due to Lexington Coal's failure to deliver any Coal to Javelin as required under Confirmation LEX20(TP)0009 and Confirmation LEX20(TP)0010;

  G. awarding Javelin its attorneys' fees and legal costs incurred in enforcing its rights under the Master Coal Purchase and Sale Agreement against Lexington Coal, as provided in Section 15.12 of the agreement;

  H. awarding Bluegrass and Javelin all interest permitted by law; and

  I. granting Bluegrass and Javelin such other and further relief as the Court deems just and proper.

DATED: January 28, 2021.

*/s/ Kevin W. Barrett*
Kevin W. Barrett
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301

  -and-

137 Betsy Brown Road
Port Chester, NY 10573
T: (304) 345-6555
F: (304) 342-1110
kbarrett@baileyglasser.com

*Attorneys for the Plaintiff*